UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY MARTIN,<br><br>                    Plaintiff,<br><br>        v.<br><br>CITY OF SAN JOSE, et al.,<br><br>                    Defendants. | Case No.  19-cv-01227-EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I.      <u>TRIAL DATE & LENGTH OF TRIAL</u>

The Court shall hold a hearing on Friday, December 4, 2020, at 1:00 p.m., to discuss the completed jury questionnaires.  The hearing shall be conducted via Zoom.

The jury trial shall begin on December 7, 2020.  Trial shall last from 8:30 a.m. to 1:30 p.m. on each day, except for Thursdays, which are dark.  On all trial days counsel shall be present in the Courtroom at 8:15 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.

The parties estimate that the trial shall last for approximately 8-10 days.  *See* Jt. PTC St. at 4.  The Court will give each side eleven (11) hours to present its case.  This includes their opening statements, time on their direct and cross-examination, and closing arguments as well as any time on voir dire of a witness.

Following this Court's order on summary judgment, the following claims remain for trial: (1) the § 1983 claim against Officer Ribeiro, (2) the negligence claim against the City, and (3) the § 52.1 claim against the City.

United States District Court<br>Northern District of California

1

## II.     WITNESSES

A.     Plaintiff

Mr. Martin has identified the following individuals as witnesses he may call in his case-in-chief. *See* Docket No. 76-1 (witness list).

   (1)  Andy Martin.

   (2)  Regina Rodriguez.

   (3)  Jovany Silva.

   (4)  Alexandre Vieira Ribeiro.

   (5)  Carl Purnell.

   (6)  Geoff Peroutka.

   (7)  Christopher Sciba.

   (8)  Steve Lagorio.

   (9)  Jeff Harwell.

   (10)  Jorge Gutierrez.

   (11)  John "Jack" Ryan (expert).

   (12)  Winthrop Smith (expert).

   (13)  Alex Barchuk (expert).

   (14)  Carol Hyland (expert).

   (15)  Robert Johnson (expert).

   (16)  Jeff Flower (expert).

   (17)  Glenn Bard (expert).

   (18)  Edward Yun (expert).

   (19)  Christopher Traver (expert).

   (20)  Meir Marmor (expert).

   (21)  Conway Lien (expert).

   (22)  Steven Woolson (expert).

   (23)  Custodian of records for the San Jose Police Department.

   (24)  Custodian of records for the Santa Clara Regional Medical Center.

1   (25) Custodian of Records for Axon, Inc.

2   (26) Custodian of Records for Santa Clara Valley.

3  Mr. Martin shall trim this list.  A reduced witness list shall be filed by November 16, 2020.

4 B. <u>Defendants</u>

5  Defendants have identified the following individuals as witnesses they may call in their

6 case-in-chief.  *See* Docket No. 76-2 (witness list).

7   (1) Ana Solorio Escalarte.

8   (2) Ruben Bejarano.

9   (3) Domico Curry.

10   (4) Bryan Sulleza.

11   (5) Alexandre Vieira Ribeiro.

12   (6) Carl Purnell.

13   (7) Christopher Sciba.

14   (8) Jeff Harwell.

15   (9) Steve Lagorio.

16   (10) Hana Martucci.

17   (11) Custodians of records (medical records, Lyft records on the date of the incident,

18    and Santa Clara County Crime Lab for toxicology results).

19   (12) Joseph Cohen (expert).

20   (13) Jeff Flower (expert).

21   (14) Steven Woolson (expert).

22   (15) Karen Preston (expert).

23   (16) Erik Volk (expert).

24  Defendants shall trim this list.  A reduced witness list shall be filed by November 16, 2020.

25  With respect to each party's witness list, the parties shall work out a stipulation regarding

26 authenticity and business records to eliminate the need to have custodians testify.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

III.   **EXHIBITS**

Both parties shall trim their exhibit lists and shall, based on the Court's comments below, attempt to resolve objections.  The revised exhibit lists shall be filed by November 16, 2020.

A.   Plaintiff's Exhibits and Defendants' Objections

The Court provides the following general guidance and/or comments with respect to Mr. Martin's exhibits.

- Not all policies of the San Jose Police Department ("SJPD") seem relevant.  With respect to relevant policies (which inform, *e.g.*, the City's negligence and/or Officer Ribeiro's knowledge), the objection can likely be overcome with the proper foundation.

- Voluminous exhibits (*e.g.*, the POST materials, medical records, lengthy video footage) shall not be admitted in their entirety.  Mr. Martin must identify specific pages or excerpts that he intends to introduce as evidence.

- Video footage in and of itself is not hearsay.  However, statements made in the video footage may or may not be hearsay.  *See Knickerbocker v. United States*, No. 1:16-cv-01811-DAD-JLT, 2020 U.S. Dist. LEXIS 51093, at *7-8 (E.D. Cal. Mar. 23, 2020) (stating that videos are not hearsay because they are visual depictions, and not statements intended to be assertions; but acknowledging that a different analysis would apply if a party was relying on a statement made captured on video).  For example, if the video captures statements by Officer Ribeiro, then Mr. Martin may offer those statements as evidence because they are admissions of a party-opponent.

- Expert reports are, as a general matter, hearsay.  However, Mr. Martin may be able to use the report to, *e.g.*, refresh Dr. Barchuk's recollection.  *See Universal Church, Inc. v. Standard Constr. Co. of S.F.*, No. 14-cv-04568-RS, 2016 U.S. Dist. LEXIS 3135, at *6-7 (N.D. Cal. Jan. 8, 2016) ("Defendants move to exclude the reports authored by Universal Church's experts on the basis that they are hearsay.  That motion is granted understanding that the reports may otherwise be used as

4

United States District Court
Northern District of California

1    appropriate for such purposes as impeachment and to refresh recollection.").

2    • To the extent there may be hearsay concerns with respect to exhibits attached to an

3    expert report, an expert can base opinions on hearsay (if an expert in the field

4    would reasonably rely upon such), but "[e]xamination of [an] expert witness cannot

5    be used as a backdoor means to present otherwise inadmissible hearsay evidence to

6    the jury." *Valiavicharska v. Celaya*, No. CV 10-4847 JSC, 2012 U.S. Dist. LEXIS

7    8191, at *7-8 (N.D. Cal. Jan. 24, 2012).

8    B.    Defendants' Exhibits and Plaintiff's Objections

9    The Court provides the following general guidance and/or comments with respect to

10   Defendants' exhibits.

11   • Exhibits that Defendants argue are relevant to only the City's claim for immunity

12   under California Vehicle Code § 17004.7 are not admissible.  The statute does not

13   apply in the instant case.  *See* Cal. Veh. Code § 17004.7(b)(1) ("A public agency

14   employing peace officers that adopts and promulgates a written policy on, and

15   provides regular and periodic training on an annual basis for, vehicular pursuits

16   complying with subdivisions (c) and (d) is immune from liability for civil damages

17   for personal injury to or death of any person or damage to property resulting from

18   the collision of a vehicle *being operated by an actual or suspected violator of the*

19   *law* who is being, has been, or believes he or she is being or has been, pursued in a

20   motor vehicle by a peace officer employed by the public entity.") (emphasis

21   added).  Training materials may be relevant if they are on point with the challenged

22   conduct in this case.

23                              **IV.    MOTIONS IN LIMINE**

24   A.    Plaintiff's Motion in Limine No. 1 (Docket No. 69)

25   Mr. Martin moves to exclude "any and all information not known to [Officer] Ribeiro

26   when he struck [Mr. Martin] with his car."  Mot. at 2.  *See generally Scott v. United States*, 436

27   U.S. 128 (1978) ("[I]n evaluating alleged violations of the Fourth Amendment the Court has . . .

28   undertaken an objective assessment of an officer's actions in light of the facts and circumstances

then known to him.").

To the extent Mr. Martin has made a blanket request for exclusion – *i.e.*, not identifying specific evidence – the motion is denied without prejudice.  The specific evidence identified by Mr. Martin in his motion is addressed below.

       1.     Toxicology Reports

The request to exclude the toxicology reports is denied.  It is true that Officer Ribeiro admitted that he did not know Mr. Martin was intoxicated on the date of the incident at issue.  However, it is a defense theory that Mr. Martin's intoxicated state was a contributing factor for the collision.  It is also reasonable for Defendants to argue at trial that Mr. Martin's version of the events is flawed because he was intoxicated.

       2.     Testimony from Security Guards

The Court reserves ruling on the request to exclude testimony from the security guards.  After the Court clarified time limits for trial, Defendants indicated that they will be reconsidering whether they will offer testimony from the security guards.  However, for the benefit of the parties, the Court provides the following guidance.  There is no dispute that the security guards did not witness the collision itself; however, that does not mean that their testimony has no probative value.  Mr. Martin seems to have taken the position that he did not know that he was being pursued by the police and that, when he did finally see the police vehicle and began to run, that was only because he was afraid he would be hit.  The security guards' testimony could put into question Mr. Martin's credibility on this point – *i.e.*, if Mr. Martin had brandished a weapon at the security guards or otherwise threatened them, then that would support the defense theory that Mr. Martin was knowingly fleeing from the police during the pursuit because he had engaged in misconduct.  Also, if Mr. Martin had brandished a weapon or otherwise made a threat to the security guards, Officer Ribeiro's testimony that Mr. Martin appeared to be reaching for a weapon in his waistband could be considered more credible, even if no weapon was ultimately found.  The Court notes, however, that it does not intend the trial to become sidetracked on the collateral issue of whether Mr. Martin actually brandished a weapon to the security guards.  Nor will the Court allow an inordinate amount of time on the question of whether Mr. Martin in fact possessed a

United States District Court
Northern District of California

6

weapon.

3.    Mr. Martin's Criminal History

Mr. Martin has an extensive criminal history.  Defendants have provided a chart summarizing that criminal history.  *See* Zoglin Decl., Ex. B (criminal history chart).  Mr. Martin's convictions date as early as 2005 and as late as 2018.  For most of the crimes, he was sentenced to less than a year.  Mr. Martin seeks to exclude evidence of all of his convictions.[1]

a.    Crimes Involving a Dishonest Act or False Statement

According to Defendants, at least some of Mr. Martin's criminal convictions are admissible under Federal Rule of Evidence 609(a)(2).

Rule 609(a)(2) provides as follows: "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  Based on the record submitted, it appears that, on January 25, 2014, Mr. Martin was convicted of the following crimes: falsely representing self as another person to a police officer (a violation of California Penal Code § 148.9) and providing false information to a police officer (a violation of California Vehicle Code § 31).  Because these crimes require the proving of a dishonest act or false statement, they are admissible.  *See United States v. Leyva*, 659 F.2d 118, 122 (9th Cir. 1981) (holding that evidence that meets the criteria of Rule 609(a)(2) is always admissible for impeachment purposes, such that there is no application of Rule 403).

b.    Crimes Punishable by Imprisonment For More Than One Year

According to Defendants, they are entitled to introduce evidence of additional convictions pursuant to Rule 609(a)(1).

Rule 609(a)(1) provides as follows: "for a crime that, in the convicting jurisdiction, was punishable . . . by imprisonment for more than one year, the evidence: (A) must be admitted,

---

[1] Defendants indicate that they also intend to introduce evidence of Mr. Martin's arrest warrants – more specifically, the arrest warrants that were in place at the time of the incident at issue.  *See* Opp'n at 7 (arguing that Mr. Martin "was fleeing the scene [because] he had committed a crime" and "there were warrants for his arrest").  The Court shall allow this specific evidence because the probative value of the evidence is not substantially outweighed by a danger of unfair prejudice, particularly if a limiting instruction is provided.

United States District Court
Northern District of California

subject to Rule 403, in a civil case . . . in which the witness is not a defendant." Fed. R. Evid. 609(a)(1). However, under Rule 609(b)(1), if "more than 10 years have passed since the witness's conviction or release from confinement, whichever is later," then "[e]vidence of the conviction is admissible only if [*inter alia*] its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

Defendants claim that the following crimes, for which Mr. Martin was convicted, have punishments that exceed more than one year in prison:

(1) May 8, 2005[2]: felony robbery.  *See* Cal. Pen. Code § 211.

(2) July 2, 2006: felony vehicle theft.  *See* Cal. Veh. Code § 10851.

(3) March 21, 2010: felony DUI causing injury.  *See id.* § 23153.

(4) March 21, 2010: felony hit and run causing injury.  *See id.* § 20001.

For purposes of this order, the Court assumes that Defendants are correct in asserting that that the four crimes identified above have punishments that exceed more than one year in prison. Nevertheless, the Court finds these convictions inadmissible under Rule 609(a)(1).

As an initial matter, the Court notes that some of these convictions (*e.g.*, (1) and (2)) should probably be evaluated under Rule 609(b)(1) – *i.e.*, it is likely that more than ten years have passed since the convictions for the crimes or Mr. Martin's release from confinement for the crimes.  However, even under the less rigorous Rule 609(a)(1) standard, it is doubtful that the evidence could be admitted because of Rule 403 (which is incorporated into Rule 609(a)(1)).  The probative value of the evidence is weak.  Robbery, vehicle theft, driving under the influence, and hit and run have little to do with Mr. Martin's alleged misconduct in the instant case, namely, threatening the security guards and/or brandishing a knife.  Meanwhile, the danger of unfair prejudice is relatively high; a jury might conclude that Mr. Martin is a serial criminal and thus presented a greater danger to Officer Ribeiro or the public than what was conveyed to Officer Ribeiro by dispatch.

In addition to the above, Defendants claim that the following crimes, for which Mr. Martin

---

[2] The dates listed here are the dates of the incidents.

United States District Court
Northern District of California

was convicted, have punishments that exceed more than one year in prison:

> (1) July 2, 2006: felony reckless driving while evading a peace officer.  *See* Cal. Veh. Code § 2800.2.[3]

> (2) December 22, 2014: felony reckless driving while evading a peace officer.  *See id.*

But here Defendants' assertion that the punishment for a § 2800.2 violation exceeds one year is incorrect.  Section 2800.2(a) provides: "If a person flees or attempts to elude a pursuing police officer . . . and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment . . . for not less than six months nor more than one year."  Cal. Veh. Code § 2800.2(a).  That being the case, Defendants cannot rely on Rule 609(a)(1) as a basis for admissibility.

According to Defendants, the § 2800.2 crimes should still be admissible as habit evidence under Federal Rule of Evidence 406.  *See* Fed. R. Evid. 406 ("Evidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit.").  But two incidents of evading the police some eight years apart is not enough to establish a habit.  Even if the Court takes into consideration the additional incident where Mr. Martin provided false information to the police (*i.e.*, the incident that took place on January 25, 2014), that still does not establish a habit of evading the police.

As a final argument, Defendants assert that, even if the Court is not inclined to admit evidence of the above convictions based on Rules 609(a)(1) and/or 406, that evidence – along with evidence of other convictions, including misdemeanors – should still be admitted under Rule 404(b).  Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"; however, the "evidence may be admissible for another purpose."  Fed. R. Evid. 404(b).

---

[3] Section 2800.2 is "an alternative felony/misdemeanor offense.  An alternative felony/misdemeanor, also known as a 'wobbler,' is deemed a felony unless charged as a misdemeanor by the People or reduced to a misdemeanor by the sentencing court under Penal Code section 17, subdivision (b)."  *People v. Statum*, 28 Cal. 4th 682, 685 (2002).

According to Defendants, the convictions are admissible under Rule 404(b) because they will not be used as character evidence but rather as evidence relevant to damages.  For example, Defendants note that Mr. Martin is claiming wage loss as a result of Defendants' misconduct; according to Defendants, because Mr. Martin is a recidivist, that affects his ability to be employed in the future (as a defense expert, Mr. Volk, will testify).  As another example, Defendants point out that, for at least a period of time after the incident at issue, Mr. Martin was incarcerated.  Defendants argue that, if Mr. Martin was incarcerated, he could not "incur costs for in-home care, a wheelchair, pool therapy, medical care, [and] other items called for by plaintiff's experts."  Opp'n at 5.

Defendants raise fair arguments; Mr. Martin asserts, however, that having the crimes come in as evidence raises the prospect of unfair prejudice under Rule 403.  Accordingly, Mr. Martin has asked that, if the Court is inclined to allow evidence of the crimes as probative of damages, then the Court should bifurcate liability from damages so that the evidence does not infect the merits of his case.  Although Defendants do not object to bifurcation, *see* Jt. PTC St. at 5 (Defendants noting that, if the jury determines there is no liability, then several experts on each party's side would not need to be called), the Court shall not do so.

A more practical approach –  one that accounts for both the probative and prejudicial value of the evidence – is to allow Defendants to provide evidence as to when Mr. Martin was incarcerated, more specifically at any point after the incident and for a three-year period prior to the incident.  Defendants, however, shall not be allowed to introduce evidence as to the nature of the crimes of which he was convicted and incarcerated.

The one possible exception is with respect to Mr. Martin's conviction for brandishing a weapon on the date of the incident.  As an initial matter, the Court shall not allow the conviction to come into evidence.  Defendants can introduce evidence about whether a weapon was brandished without further introducing into evidence that Mr. Martin was actually convicted of such.  However, if Mr. Martin provides testimony that he did not brandish a weapon, then the door may be opened to the conviction evidence.

United States District Court
Northern District of California

4.     Current Criminal Proceedings Against Mr. Martin

Apparently, there are current criminal proceedings against Mr. Martin based on an incident that took place in December 2019.  He has been charged with two felonies: (1) "accessory to an assault with a deadly weapon (Penal Code § 32)" and (2) "reckless driving while evading a police officer (Vehicle Code § 2800.2)."  Opp'n at 5.  Because these are only charges and not convictions, the evidence is not currently admissible, if only based on Rule 403.

Defendants argue, however, that there is a possibility that the criminal proceedings will be resolved by the time that the instant case goes to trial.  This is a legitimate point.  Assuming that Mr. Martin was convicted of either or both crimes, the Court would likely rule consistent with the above – *i.e.*, permit Defendants to provide evidence about when Mr. Martin was incarcerated but not about the specific crimes of which he was convicted.

B.     Plaintiff's Motion in Limine No. 2 (Docket No. 71)

Mr. Martin moves to exclude certain testimony from Defendants' expert, Mr. Flower.  Mr. Flower is the City's video expert.  He aligned the video footage for the body-worn cameras of Officer Ribeiro and Officer Purnell.

The bulk of Mr. Martin's motion is moot.  Defendants agree with Mr. Martin that Mr. Flower should not be allowed to opine on, *e.g.*, (1) whether Officer Ribeiro misjudged the distance between his police car and Mr. Martin; (2) whether Officer Ribeiro aggressively turned his car away from Mr. Martin.  *See* Opp'n at 4.

However, to the extent Mr. Martin argues that Mr. Flower should not be allowed to testify about whether the police car moved backwards, the motion is denied.  Mr. Flower can express his opinion on the matter based on his experience.  Mr. Martin, of course, is free to cross-examine Mr. Flower about whether (as reflected in the video footage from Officer Ribeiro's body-worn camera) the tree line was moving laterally in the side view mirror.  *See also* Flower Decl. ¶ 4 (testifying that, at his deposition, he was shown a compilation of video images that he had not seen before and that, based on that viewing, there was "a very small amount of inconsistent lateral movement" but there was not "any lateral movement that is consistent with the vehicle moving in reverse"; "[t]he movement of the tree line reflection is so minimal that it is explained by camera movement,

1   not the vehicle moving in reverse").

2   C.      Plaintiff's Motion in Limine No. 3 (Docket No. 72)

3              Mr. Martin moves to exclude certain testimony from Defendants' expert, Dr. Cohen.  Dr.

4   Cohen is a physician.  According to Mr. Martin, although Dr. Cohen is qualified to describe Mr.

5   Martin's injuries to his hip and ankle, he is not qualified to provide testimony on the causation of

6   the injuries.

7              The Court defers ruling on the motion.  The Court does not have concern about Dr.

8   Cohen's qualifications.  *See generally* Cohen Decl.  However, it is not sufficiently clear from the

9   record provided what methodology Dr. Cohen used to opine on the cause of Mr. Martin's injuries.

10  *See, e.g.*, Cohen Decl. ¶ 6 (testifying that he has "determined the mechanism of injury or death in

11  many hundreds of incidents involving vehicles" but not providing any specifics).  The Court shall

12  permit voir dire of Dr. Cohen at trial to determine whether he should be allowed to provide

13  testimony to the jury.

14             The Court notes that, if Dr. Cohen is permitted to testify, Defendants agree that he cannot

15  testify that the collision was accidental rather than intentional.  *See* Opp'n at 6 (agreeing with Mr.

16  Martin that Dr. Cohen "should not testify as to what Officer Ribeiro was thinking").

17  D.      Defendants' Motion in Limine No. 1 (Docket No. 66)

18             Defendants move to limit the scope of the testimony of three of Mr. Martin's experts,

19  namely, Mr. Ryan (police practices), Dr. Smith (injury causation), and Mr. Johnson (damages).

20         1.      Mr. Ryan

21             Mr. Ryan is the police practices expert for Mr. Martin.  Defendants argue that Mr. Ryan

22  should be precluded from testifying about various subject matters, each of which is addressed

23  below.

24         a.      California's Peace Officer Standards and Training ("POST")

25             Defendants argue that Mr. Ryan does not have experience with POST and therefore is not

26  qualified to testify about whether Officer Ribeiro's conduct complied with or was consistent with

27  POST.  Mr. Martin does not, in his opposition, make any argument that Mr. Ryan should be

28  permitted to testify about POST.  Accordingly, the motion to exclude testimony related to POST is

United States District Court
Northern District of California

United States District Court
Northern District of California

1    granted.  This ruling, however, does not bar Mr. Ryan from testifying about police standards,

2    training, practices, and/or procedures other than POST specifically.  *See Smith v. City of Hemet*,

3    394 F.3d 689, 703 (9th Cir. 2005) (noting that "[a] rational jury could rely upon such evidence

4    [*i.e.*, whether the officers' conduct comported with standards or training] in assessing whether the

5    officers' use of force was unreasonable").

b.    Legal Conclusions and Legal Terminology

7    Defendants contend that Mr. Ryan should not be permitted to make legal conclusions as

8    part of his testimony.  Relatedly, they argue that Mr. Ryan should not be permitted to use legal

9    terminology in providing his opinions (*e.g.*, excessive force, unreasonable force, seize).  The Court

10   agrees with Defendants in part.

11   Consistent with the weight of authority, Mr. Ryan is barred from opining that Officer

12   Ribeiro used excessive force in the instant case or that his actions were objectively unreasonable

13   in the instant case.  *See, e.g.*, *Thompson v. City of Chi.*, 472 F.3d 444, 458 (7th Cir. 2006) (noting

14   that "[t]he jury . . . was in as good a position as the experts to judge whether the force used by the

15   officers to subdue [the plaintiff] was objectively reasonable given the circumstances in this case[;]

16   [i]ntroducing two experts to testify that [the officers] used excessive force would have induced the

17   jurors to substitute their own independent conclusions for that of the experts"); *cf. Hangarter v.*

18   *Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (stating that, "[w]hile

19   [expert's] testimony that Defendants deviated from industry standards supported a finding that

20   they acted in bad faith, [expert] never testified that he had reached a legal conclusion that

21   Defendants actually acted in bad faith (i.e., an ultimate issue of law)").

22   However, as indicated above, Mr. Ryan can still provide testimony about whether Officer

23   Ribeiro's actions comported with police practices and procedures.  *See, e.g.*, *Garcia v. Cty. of*

24   *Riverside*, No. CV 5:18-00839 SJO (ASx), 2019 U.S. Dist. LEXIS 167582, at *34-35 (C.D. Cal.

25   June 7, 2019) (stating that expert "may testify about hypothetical situations" and "whether the

26   actions of Defendants complied with applicable law enforcement procedures," including "the

27   reasons why the actions of Defendants did not comply with applicable procedures"); *Zeen v. Cty.*

28   *of Sonoma*, No. 17-cv-02056-LB, 2018 U.S. Dist. LEXIS 137744, at *8 (N.D. Cal. Aug. 9, 2018)

1    (permitting expert to testify "about police procedures or what a hypothetical reasonable officer

2    might have done"); *Cooke v. City of Stockton*, No. 2:14-CV-00908-KJM-KJN, 2017 U.S. Dist.

3    LEXIS 207779, at *15-16 (E.D. Cal. Dec. 18, 2017) (stating that expert "may within the scope of

4    his expertise opine as to whether defendants complied with applicable procedures on the night of

5    the incident," and expert's "opinions may be explored through hypothetical questioning"); *Estate

6    of Creach v. Spokane Cty.*, No. CV-11-432-RMP, 2013 U.S. Dist. LEXIS 200049, at *11-12 (E.D.

7    Wash. May 2, 2013) (stating that expert "may testify in terms of whether Deputy Hirzel's actions

8    comported with police practices and procedures").

9         In addition, although the Court agrees with Defendants that Mr. Ryan should not use

10    specialized legal terms such as "excessive force" and "objectively unreasonable," *cf. M.H. v. Cty.

11    of Alameda*, No. 11-cv-02868-JST, 2015 U.S. Dist. LEXIS 44, at *7-8 (N.D. Cal. Jan. 1, 2015)

12    (stating that "experts on both sides may testify as to appropriate standards of care – which go to

13    the ultimate issues of 'deliberate indifference' and what conduct is 'objectively reasonable' – so

14    long as they do not use those 'judicially defined' and 'legally specialized' terms"), he is not

15    outright barred from using general terms such as "reasonable" and "unreasonable."  Whether these

16    terms are appropriate will depend on context.  *Cf. United States v. Perkins*, 470 F.3d 150, 158 (4th

17    Cir. 2006) (noting that "the legal meaning of some terms is not so distinctive from the colloquial

18    meaning, if a distinction exists at all, making it difficult to gauge the helpfulness, and thus

19    admissibility, of the testimony under Rule 704").  In *Ramirez v. City of Gilroy*, No. 17-cv-00625-

20    VKD, 2020 U.S. Dist. LEXIS 56109 (N.D. Cal. Mar. 27, 2020), Judge Demarchi provided useful

21    guidance:

22              Here, Mr. Clark (and any other expert) must avoid using specialized
         legal terms, such as "excessive force," "battery," or "negligence" in
23         testifying about his opinions in this case, so as not to suggest to the
         jury the conclusion they should reach on plaintiffs' claims.  Whether
24         an expert may use other words that have both lay and legal meaning,
         such as "reasonable" or "unreasonable," is a more difficult question,
25         and one on which different courts have reached different
         conclusions.  In this case, the parties' respective experts must avoid
26         using judicially defined or legally specialized terms, and they must
         not testify that certain conduct was or was not unlawful or
27         unconstitutional.  *The Court will not absolutely prohibit use of lay
         terms, such as "reasonable" or "unreasonable," so long as it is
28         clear that the expert is using such terms in the context of discussing*

United States District Court
Northern District of California

> *how the conduct compares to relevant procedures, policies,*
> *practices, experience, or norms of conduct, and not giving an*
> *opinion regarding whether the conduct does or does not meet a*
> *specific legal standard.*

*Id.* at *21-22 (emphasis added).

### c.    Alternatives

Defendants further argue that Mr. Ryan should be precluded from testifying about "other options Officer Ribeiro might have had or what he should have done in retrospect, such as waiting for other officers." Mot. at 4. *See generally Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (noting that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."). The Court does not agree.

Defendants cite in support an Eighth Circuit case, *see Schultz v.* Long, 44 F.3d 643, 649 (8th Cir. 1995) (stating that "[a]lternative measures which 20.20 hindsight reveal to be less intrusive (or more prudent) . . . are simply not relevant to the reasonableness inquiry"), but Ninth Circuit authority is to the contrary, reflecting that the availability of alternatives is relevant to the Fourth Amendment and negligence claims. *See Glenn v. Wash. Cty.*, 673 F.3d 864, 876 (9th Cir. 2011) ("consider[ing] whether there were less intrusive means of force that might have been used before officers resorted to the beanbag shotgun"; although "[o]fficers need not avail themselves of the least intrusive means of responding to an exigent situation," they are 'required to consider [w]hat other tactics if any were available, and if there were clear, reasonable and less intrusive alternatives to the force employed, that militate[s] against finding [the] use of force reasonable") (internal quotation marks omitted); *Smith*, 394 F.3d at 703 (stating that "an additional factor that we may consider in our *Graham* analysis is the availability of alternative methods of capturing or subduing a suspect.").

### d.    Reversing or Backing Up

Finally, Defendants argue that Mr. Ryan should be barred from testifying that it was

15

United States District Court
Northern District of California

1  unreasonable for Officer Ribeiro to back up over Mr. Martin after he had already run Mr. Martin

2  over.  The Court shall allow Mr. Ryan to provide limited testimony as to what are standard police

3  practices when a police officer hits and runs over a person with a police vehicle.  Beyond this

4  specific testimony, the Court is not convinced that Mr. Ryan has specialized expertise that would

5  be helpful to the jury (with respect to the issue of backing up).

6        2.   <u>Dr. Smith</u>

7        Dr. Smith has a PhD in biomechanical engineering.  Defendants argue that, although Dr.

8  Smith is qualified to testify about "certain aspects of the [collision], such as the sequence of

9  events," he is not qualified to provide testimony on "medical diagnoses or the medical

10  consequences of the collision."  Mot. at 5.  *See, e.g.*, Zoglin Decl., Ex. D (Smith Depo. at 54)

11  (testifying  "people get run over by vehicles all the time and they [just] have pelvic fractures or a

12  fracture to the leg"; also testifying that "[p]eople don't get fractures to the pelvis from a 5-mile-per

13  hour impact with a vehicle").

14        The Court agrees that Dr. Smith cannot provide medical diagnoses or express medical

15  opinions but this is largely an uncontested point.  Where the parties disagree is with respect to

16  whether Dr. Smith can testify about injury causation.  To the extent Defendants suggest that Dr.

17  Smith cannot provide any testimony related to injury causation, the Court does not agree.  Most

18  courts are of the view that injury causation is not the sole province of medical experts.  *See, e.g.*,

19  *Contreras v. Brown*, No. CV-17-08217-PHX-JAT, 2018 U.S. Dist. LEXIS 222209, at *9 (D. Ariz.

20  Dec. 4, 2018) (stating that "Manning would exceed the scope his expertise as a biomechanical

21  engineer by testifying to the medical causation of Plaintiffs' specific injuries, rather than the

22  general types of injuries that may be caused by forces generated in a crash"); *Morgan v. Girgis*,

23  No. 07 Civ. 1960 (WCC), 2008 U.S. Dist. LEXIS 39780, at *14 (S.D.N.Y. May 16, 2008) (stating

24  that "'biomechanics are qualified to determine what injury causation forces are in general and can

25  tell how a hypothetical person's body will respond to those forces, but are not qualified to render

26  medical opinions regarding the precise cause of a specific injury'").  And it appears that Dr. Smith

27  has sufficient training and experience to give this type of testimony.

28        As with Dr. Cohen, however, the Court shall voir dire Dr. Smith to ensure that there are no

16

1    *Daubert* concerns regarding his methodology.  The Court notes, however, that Dr. Smith's

2    opinions are backed by more specific evidence/materials than Dr. Cohen's.

3            3.      Mr. Johnson

4            Mr. Johnson, an economist, is one of Mr. Martin's damages experts.  Defendants express

5    concern that Mr. Johnson may offer legal opinions to the jury because, at his deposition, he made

6    references to jury instructions.  The motion to exclude is moot.  Mr. Martin agrees that Mr. Martin

7    cannot provide legal opinions and that his testimony will not incorporate jury instructions.

8    E.      Defendants' Motion in Limine No. 2 (Docket No. 66-2)

9            Defendants move to exclude or limit the testimony "(1) of non-retained experts and (2) by

10   Plaintiff regarding causes of mental health or other medical issues that he might attribute to the

11   incident."  Mot. at 1.

12           Regarding nonretained experts, Defendants explain that Mr. Martin has identified three

13   physicians (Dr. Traver, Dr. Marmor, and Dr. Lien) who treated him immediately after the incident.

14   Defendants maintain that the doctors my testify only about the injuries they observed and the treat

15   they provided, not about, *e.g.*, "the mechanism of Plaintiff's injuries, how the accident occurred

16   based on the injuries suffered, their opinions regarding the prospects of recovery, their opinions

17   regarding future treatment that might be needed, or any other opinion that would be allowed of an

18   expert witness."  Mot. at 2.  In response, Mr. Martin agrees.  *See* Opp'n at 2 (stating that he "does

19   not intend to offer their testimony for any reason but regarding the injuries they observed and the

20   treatment they provided").  Accordingly, the motion to exclude is moot.

21           As for testimony by Mr. Martin, Defendants assert that he can testify about his experiences

22   with respect to his mental or physical conditions but not about "to what extent the incident caused

23   or exacerbated his mental or physical conditions because those opinions are properly reserved for

24   expert testimony."  Mot. at 2.  Here, again, Mr. Martin agrees, and thus the motion to exclude is

25   moot.

26   F.      Defendants' Motion in Limine No. 3 (Docket No. 66-4)

27           Defendants move to exclude evidence regarding "healthcare providers that were not

28   disclosed, such as psychological counseling, physical therapy, and in-home supportive services."

United States District Court
Northern District of California

17

1    Mot. at 1.

2         The motion is granted in part and denied in part.  As an initial matter, the Court notes that

3    the parties agree that Ms. Rodriguez – Mr. Martin's girlfriend – may testify.  She will not be

4    permitted to provide medical-related testimony; however, she can provide testimony about what

5    she observed with respect to Mr. Martin and the assistance she gave to him.

6         As for other healthcare providers, Mr. Martin confirmed that he will not be relying on any

7    physical therapist or mental health provider at trial.

8         To the extent Mr. Martin has damages experts who opine about future medical expenses

9    for physical therapy or mental health treatment, that testimony is permitted.  Simply because Mr.

10   Martin did not get treatment for such in the past does not foreclose the possibility that he will need

11   treatment in the future.  (The expert testimony will not rely on such past treatment.)  Defendants,

12   of course, are free to cross-examine on the issue.

13   G.    Defendants' Motion in Limine No. 4 (Docket No. 66-6)

14        Defendants move to exclude evidence related to other use-of-force cases as irrelevant and

15   unfairly prejudicial.  *See* Fed. R. Evid. 402-03.  Mr. Martin opposes, indicating that "he may wish

16   to refer to other use of force cases for illustrative purposes at closing or with a witness, or at voir[]

17   dire to probe the jurors familiarity with police brutality."  Opp'n at 2.

18        The Court denies the motion without prejudice.  At the hearing, Mr. Martin clarified that

19   he would not be introducing into evidence other use-of-force cases; rather, he might make a

20   distinction or a comparison as a part of attorney argument.  The Court shall give Mr. Martin some

21   leeway here but forewarns Mr. Martin that he does not have free rein here.  For example, if Mr.

22   Martin makes a reference to a specific case to try to send a message to the jury, that would be

23   unfairly prejudicial in violation of Rule 403.  In such a circumstance, the Court would expressly

24   voice to the jury its strong disapproval of Mr. Martin's conduct.

25   H.    Defendants' Motion in Limine No. 5 (Docket No. 66-8)

26        Defendants move to exclude "reference to (1) any Independent Police Auditor review and

27   (2) the San Jose Police Department's internal investigation that resulted in discipline of Officer

28   Ribeiro."  Mot. at 1.  As background, Mr. Martin "filed a citizen's complaint with the San Jose

United States District Court
Northern District of California

18

1    Independent Police Auditor ("IPA"), which interviewed [Mr. Martin].  The San Jose Police

2    Department (Sgt. Sciba and Lt. Lagorio) [also] investigated the [collision] and the Department

3    imposed discipline on Officer Ribeiro."  Mot. at 1.

4          Defendants argue that evidence of the auditor review and internal investigation should both

5    be excluded under *Maddox v. Los Angeles*, 792 F.2d 1408 (9th Cir. 1986).  There, the district court

6    had excluded evidence of an Internal Affairs investigation and police disciplinary proceedings,

7    and the Ninth Circuit upheld that decision on appeal.  The Ninth Circuit noted that the evidence

8    was properly excluded with respect to the defendant city because the evidence reflected "remedial

9    measures taken after the incident" and thus was excludable under Rule 403 and/or Rule 407.  *Id.* at

10   1417; *see also* Fed. R. Evid. 407 (providing that, "when measures are taken that would have made

11   an earlier injury or harm less likely to occur, evidence of the subsequent measures is not

12   admissible to prove [*e.g.*] negligence [or] culpable conduct . . . [b]ut the court may admit this

13   evidence for another purpose, such as impeachment").  The Ninth Circuit further held that the

14   same evidence was properly excluded as to the individual officer because (1) the evidence

15   "arguably had little probative value" (there was already "substantial evidence before the jury" that

16   the officer had violated the city policy) and (2) the "prejudicial effect of [the] evidence was also

17   arguably great" (the jury could have "inferred that [the officer] was guilty of wrongdoing merely

18   because the Police Department conducted disciplinary proceedings" or the jury could have "given

19   unfair or undue weight to [the] evidence").  *Maddox*, 792 F.2d at 1417.

20         In response, Mr. Martin states that he does not intend to introduce "the actual conclusions

21   that [Officer Ribeiro] was negligent and disciplined."  Opp'n at 2.  According to Mr. Martin, he

22   simply wants to rely on the evidence that was collected as part of the investigations – *e.g.*,

23   photographs and diagrams of the scene.

24         At the hearing, Defendants conceded that this kind of evidence (photographs, diagrams,

25   etc.) could be admitted, so long as Mr. Martin laid the proper foundation.  *See* Fed. R. Evid.

26   803(8) (providing for an exception to the hearsay rule for public records – *i.e.*, a record or

27   statement of a public office that sets out the office's activities and, *e.g.*, a matter observed while

28   under a legal duty to report or factual findings from a legally authorized investigation).  In

United States District Court
Northern District of California

19

1    addition, statements of either party contained in a report are likely admissible as admissions of a

2    party-opponent.

3            Defendants expressed concern that providing the context for this evidence – that it was

4    gathered as part of an investigation – might be prejudicial as the jury would know that there was

5    an investigation but not what the results of that investigation were.  As a practical matter,

6    however, giving the jury the context for the evidence is unavoidable.  More important, any

7    prejudice is capable of being cured by giving the jury an instruction that it is not to speculate about

8    the conclusions of any investigation.  If, at trial, Defendants believe the development of the

9    evidence is prejudicial, then they may object or ask for the reports to be admitted into evidence.

10   The Court will judge admissibility based on, *inter alia*, Rule 803(8).  Defendants are forewarned

11   that the Court is skeptical of Defendants' position that only parts of the reports (*e.g.*, just the

12   conclusions) can be admitted into evidence as a cure.  If reports are admitted, they will be

13   admitted in whole.

14   I.      Defendants' Motion in Limine No. 6 (Docket No. 66-10)

15           Defendants move the Court to exclude (1) evidence that the officers did not ever locate a

16   firearm or knife and (2) evidence that an officer (not Officer Ribeiro) falsely told Mr. Martin's

17   cousin that Mr. Martin admitted he had a weapon or that a weapon had been found.  According to

18   Defendants, this evidence is irrelevant and unfairly prejudicial.

19           As to the first piece of evidence, the Court finds that it is relevant.  Mr. Martin claims that

20   he did not have a weapon on the night of the incident at issue.  Because no weapon was located, a

21   jury could find Mr. Martin credible on this point and therefore it might question Officer Ribeiro's

22   credibility – *e.g.*, that the officer saw Mr. Martin reaching for his waistband during the pursuit,

23   suggesting that Mr. Martin was reaching for a weapon.  The Court also holds that the danger of

24   unfair prejudice does not substantially outweigh the probative value of this evidence.

25           However, for the second piece of evidence, it has at best marginal probative value which is

26   substantially outweighed by the danger of unfair prejudice.  The Court therefore shall not admit

27   the evidence unless the door is opened, *e.g.*, for impeachment.  This ruling does not bar Mr.

28   Martin's cousin from testifying that he never saw Mr. Martin with a weapon.

United States District Court
Northern District of California

United States District Court
Northern District of California

J.      Defendants' Motion in Limine No. 7 (Docket No. 66-12)

In this motion in limine, Defendants make two requests.  Defendants first move the Court to preclude Mr. Martin from (1) releasing the body-worn camera video footage to media outlets or third parties until after the jury renders its verdict or (2) pointing the media or third parties to the footage (as it is publicly available on ECF) until after the verdict.  Defendants have concern that, without an order, the jury pool could be tainted.  Second, Defendants ask the Court to preclude the jury from viewing the video footage that shows the "aftermath of the incident" or, in the alternative, that such footage be played only a single time.  Mot. at 2.  According to Defendants, it is proper to exclude the aftermath in its entirety because the issues for trial are whether there was a seizure and whether Officer Ribeiro acted reasonably.  Alternatively, Defendants argue that, if the aftermath is relevant to damages, playing the footage "multiple times[] would serve solely to inflame the jury."  Mot. at 2.

The motion is denied.  Defendants are essentially asking for a kind of gag order.  A gag order is considered a prior restraint on speech and, as such, is permissible only if "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available."  *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir. 1985).  Given this rigorous standard, Defendants' request lacks merit.  Defendants' concerns can be addressed in other ways.  For example, during voir dire, the Court can vet potential jurors to see if they have knowledge of the case.  During jury instructions, the Court shall also direct the jurors that they are not to read articles or watch news about the case, etc.  *See, e.g.*, 9th Cir. Model Civil Jury Instructions Nos. 1.15-1.16.

As for Defendants' second request, it is denied.  The request is denied to the extent Defendants seek to bar Plaintiffs from showing the post-incident video footage at all.  As Plaintiffs point out, this footage is relevant because it may be used to attack Officer Ribeiro's credibility – *e.g.*, when he claimed to Mr. Martin that he did not hit Mr. Martin.  The video is also relevant to Mr. Martin's pain and suffering.  To the extent Defendants ask for the post-incident video footage to be shown only a single time, the request is also denied with prejudice; however, the Court does

1     not preclude Defendants from raising an objection should, *e.g.*, Mr. Martin repeatedly play the

2     footage such that there are Rule 403 concerns.

3     K.     <u>Defendants' Motion in Limine No. 8 (Docket No. 67)</u>

4        Defendants moves to exclude witnesses, other than parties or party representatives, from

5     the courtroom during trial.  Mr. Martin objects only to the extent that expert witnesses should be

6     permitted.  The Court shall allow expert witnesses to be in the courtroom during trial.  Mr.

7     Martin's treating physicians, for these purposes, are not considered expert witnesses.

8                           **V.**     **<u>JURY INSTRUCTIONS</u>**

9        The Court will address the jury instructions in a separate order.  The Court intends to file

10     proposed jury instructions and give the parties an opportunity to raise objections.

11        At the hearing, the Court asked the parties to consider whether there could be a single set

12     of instructions for the § 1983 claim and the § 52.1 claim, notwithstanding the fact that the former

13     claim is asserted against Officer Ribeiro and the latter against the City.  The parties shall meet and

14     confer and provide a joint filing on this issue by November 16, 2020.

15                           **VI.**     **<u>JURY VERDICT FORM</u>**

16        The Court will fashion an appropriate general verdict form.

17                           **VII.**     **<u>JURY VOIR DIRE</u>**

18        The Court will address the jury questionnaire in a separate order.  The Court intends to file

19     the proposed questionnaire and give the parties an opportunity to raise objections.

20

21        **IT IS SO ORDERED**.

22

23     Dated: November 11, 2020

24

25     _____

26     EDWARD M. CHEN
      United States District Judge

27

28

United States District Court
Northern District of California